UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FELIPE PONZ-GOMEZ,

      Petitioner,

v.                                     Case No. 2:26-cv-2025-JES-NPM

WARDEN, FLORIDA SOFT SIDE
SOUTH DETENTION FACILITY, et
al.,

      Respondents.
_____/

## OPINION AND ORDER

Petitioner Felipe Ponz-Gomez, an immigration detainee, initiated this action by filing a pro se 28 U.S.C. § 2241 petition for writ of habeas corpus. (Doc. 1). Respondents have filed a response to the petition. (Doc. 7). Upon review of the parties' filings, the Court finds, without the benefit of a reply, that the petition must be granted.

## I.    Background

Ponz-Gomez is a national and citizen of Cuba who entered the United States at an unknown time and place. (Doc. 7 at 2). After being convicted on several drug-related and racketeering offenses, an immigration judge ordered his removal to Cuba or Costa Rica on March 21, 2007. (Doc. 7 at 2; Doc. 7-1 at 5). Ponz-Gomez was transferred into immigration custody from the Collier County Jail

on January 9, 2026 after completing his sentence on local charges. (Doc. 7 at 2).[1]

Since his latest detention, Ponz-Gomez refused to sign a third country removal form, has refused to "exit his pod," and has expressed a general unwillingness to be removed to Mexico. (Doc. 7-2 at 2).

## II.  Discussion

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." Singh v. U.S. Attorney Gen., 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)).  The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final.  Id.  Detention may continue after the removal period, but not indefinitely.

Ponz-Gomez argues that he is entitled to release under Zadvydas v. Davis, 533 U.S. 678 (2001), because his post-removal-order detention exceeds six months and there is no significant likelihood of removal in the reasonably foreseeable future.  In Zadvydas, the Supreme Court held that "if removal is not reasonably

---

[1] Respondents do not say when Ponz-Gomez was released on an order of supervision, but they do state that he "was served with notice of revocation of his release on July 7, 2026." (Doc. 7 at 2).

foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 700-01 (2001). If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." Id. at 699. The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." Id. at 701. So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. Id. If, after 180 days, the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must provide sufficient evidence to show otherwise. Id.[2]

There is no dispute that Ponz-Gomez has been in ICE custody for more than six months following his latest order of removal. However, Respondents argue that the Court should toll the removal period under 8 U.S.C. § 1231(a)(1)(C). Generally, Respondents contend that Ponz-Gomez is not entitled to release because after

---

[2] The Supreme Court subsequently clarified that inadmissible aliens held in post-removal detention are also entitled to this type of individualized review after their detention exceeds six months. See Clark v. Martinez, 543 U.S. 371 (2005) (extending Zadvydas's holding to inadmissible aliens as a matter of statutory interpretation).

his detention, ICE attempted third-country removal to Mexico, but he thwarted ICE's efforts at removal by failing to voluntarily depart. (Doc. 7-2).

Title 8 U.S.C. § 1231(a)(1)(C) explicitly provides for extension of the removal period "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). The Eleventh Circuit Court of Appeals has recognized that the six-month period may be tolled if the noncitizen "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal order and his post-removal period detention." Akinwale, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)). More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'" Singh, 945 F.3d at 1314 (quoting Pelich v. Immigr. & Naturalization Serv., 329 F.3d 1057, 1060 (9th Cir. 2003)).

Here, Respondents do not show that Ponz-Gomez's actions implicated § 1231(a)(1)(C). They offer the declaration of

4

Deportation Officer Lorenzo Garcia who generally asserts that Petitioner has refused to depart to Mexico, and most recently, on July 7, 2026, "when ERO requested to remove Felipe Ponz-Gomez to Mexico, Felipe Ponz-Gomez verbally expressed he was unwilling to comply and refused to exit his pod." (Doc. 7-2 at 2). Officer Garcia admits that Cuba has refused to accept Ponz-Gomez and that "[t]he anticipated timeline to Remove Felipe Ponz-Garcia is currently unknown." (Id.) Conspicuously absent from the supplemental response is any evidence that any country has agreed to accept Ponz-Garcia (and provided the appropriate paperwork) or has even been informed of his existence. In fact, Respondents provide no evidence suggesting that ICE has actually communicated with any country (other than Cuba) specifically regarding Ponz-Gomez. Nor do Respondents claim that necessary travel documents have been sought—let alone obtained—for any country. Without more, the Court cannot find that Ponz-Gomez's lack of enthusiasm for removal to Mexico reset Zadvydas' 180-day clock. The Court's confidence in Ponz-Gomez's foreseeable removal to Mexico is further undermined by the fact that other district courts recognize that Mexico's acceptance of a Cuban national may be contingent upon the noncitizen's agreement to go there, which Respondents clearly do not have. See Sanchez v. Bondi, et al., No. C25-2573-KKE, 2026 WL 160882, at 3-4 (W.D. Wash. Jan. 21, 2026) (noting that Mexico's conditional acceptance casted doubt on Respondents'

5

ability to remove the petitioner); <u>Arenado-Borges v. Bondi</u>, No. 2:25-cv-2193-JNW, 2020WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025) ("[T]he record suggest Mexico's acceptance may be contingent on the noncitizen's consent").

In short, Respondents have had almost 19 years—and more than six months since his present detention—to remove Ponz-Gomez from the United States and are still unable to articulate a specific plan for his removal to Cuba, Costa Rica, Mexico, or another country. Instead, the only efforts at removal are attempts to coerce Ponz-Gomez into voluntarily departing to a country of which he is not a citizen.  But detaining a noncitizen and using the specter of continued detention to compel him to "voluntarily" depart by walking across an international border does not constitute removal; rather, it is an action designed to lead to the type of indefinite detention that <u>Zadvydas</u> sought to prevent. And while there may be some possibility that Mexico will eventually accept Ponz-Gomez, "that is not same as a significant likelihood that [he] will be accepted in the *reasonably foreseeable future*." <u>Arenado-Borges</u>, 2025 WL 3687518, at *4 (emphasis added, quotations omitted).

Based on the evidence, or lack thereof, the Court finds that Respondents do not show a significant likelihood that Ponz-Gomez will be removed in the reasonably foreseeable future.  Therefore, he is entitled to release from detention under <u>Zadvydas</u>, but he

remains subject to the terms of an order of supervision.  If he fails to comply with the conditions of release, Ponz-Gomez may be subject to criminal penalties—including further detention.  See 8 U.S.C. § 1253(b); Zadvydas, 533 U.S. at 695("[W]e nowhere deny the right of Congress . . . to subject [aliens] to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

If removal becomes likely in the reasonably foreseeable future, ICE can re-detain Ponz-Gomez to "assur[e] [his] presence at the moment of removal."  Zadvydas, 533 U.S. at 680.

### III. Conclusion

Accordingly, it is **ORDERED**:

1.   Felipe Ponz-Gomez's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** to the extent set forth in this Order.

2.   Respondents shall release Ponz-Gomez within 24 hours of this Order and facilitate his transportation from the detention facility by allowing him telephone access to notify counsel and his family of when and where he can be collected.

3.   The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on July 10, 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

7